IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY

RAFAEL MEDOFF
11917 Viewcrest Terrace
Silver Spring, Maryland 20902

Plaintiff

v. Case No.: 263099-V

ZIONIST ORGANIZATION OF AMERICA
4 East 34th Street
New York, NY 10016

Serve on:
Gary Trachten, Esquire
Kudman Trachten LLP
The Empire State Building
350 Fifth Avenue
Suite 4400
New York, New York 10118

Defendant

RECEIVED
JUL 12 2005
Clerk Circuit Court
Montgomery County, Md.

* * * * *

**COMPLAINT**

PLAINTIFF, Rafael Medoff (hereinafter "Medoff"), by and through his attorneys, Council, Baradel, Kosmerl & Nolan, P.A., Susan Stobbart Shapiro and Michael S. Steadman, Jr., hereby files this Complaint against Defendant, the Zionist Organization of America (hereinafter "ZOA" or "Defendant"), and in support thereof states as follows:

**FACTS COMMON TO ALL COUNTS**

**Parties**

1. Medoff is a citizen of the State of Maryland, who resides in Montgomery County.

2. ZOA is an ordinary, non-stock business incorporated under the laws of New York that transacts business in the State of Maryland, and more specifically in Montgomery County.

**Jurisdiction and Venue**

3. This Court has personal jurisdiction over the Defendant in this matter pursuant to Maryland Code Courts and Judicial Proceedings § 6-103 in that ZOA transacted business within the State of Maryland, and because ZOA, by its acts and omissions alleged herein, caused tortious injuries within the State of Maryland.

4. This Court is the proper venue for this matter pursuant to Maryland Code Courts and Judicial Proceedings §§ 6-201(a)-(b) because ZOA transacted business within Montgomery County.

**Factual Background**

5. Medoff worked for ZOA as a non-union, senior level staff member for approximately eleven (11) years, beginning on or about December 13, 1993, and ending on December 31, 2004. His duties included contributions to policy planning, public relations, staff supervision, research, and writing.

6. On or about December 13, 1993, Medoff began to work full time for ZOA, for an annual salary determined at the sole discretion of ZOA. Medoff was informed at the inception of his work with ZOA, by Morton A. Klein, then and now the "National President" of ZOA (hereinafter "Klein"), that he would receive all the benefits received by ZOA employees in its New York home office.

7. From approximately December 13, 1993 to early June, 1994, per Klein's instructions, Medoff submitted invoices to ZOA in order to be paid Medoff's aforementioned annual salary. The amount for each said invoice was determined in accordance with said annual salary.

8. Beginning on or about June, 1994, pursuant to discussions between Klein, ZOA Board Chair Edward Siegel, ZOA health insurance representative Larry Weinraub, Goldblatt, and Medoff, Twelve Thousand Dollars ($12,000.00) of Medoff's annual salary from ZOA was paid directly from ZOA's payroll, with the remaining portion of that annual salary being paid through invoices submitted to ZOA by Medoff (through C. Gottlieb Associates, an entity created for this purpose), with the amount for each said invoice determined in accordance with said annual salary.

9. Beginning on or about September 1998, Medoff's annual salary from ZOA was paid entirely through invoices submitted to ZOA by Medoff, the amount for each said invoice determined in accordance with that annual salary.

10. Throughout the entire period that Medoff worked for ZOA, Medoff received paid vacation days, as did all other ZOA employees.

11. Throughout the entire period that Medoff worked for ZOA, Medoff received paid 'sick days,' as did all other ZOA employees.

12. Throughout the entire period that Medoff worked for ZOA, Medoff received paid personal days, as did all other ZOA employees.

13. Throughout the entire period that Medoff worked for ZOA, ZOA paid for health insurance coverage for Medoff and his family, as it did for other ZOA employees

(although the payment on behalf of Medoff was through reimbursement rather than through inclusion on a company health insurance policy).

14. Throughout the entire period that Medoff worked for ZOA, ZOA set Medoff's salary, including both raises and reductions, in its sole discretion.

15. Throughout the entire period that Medoff worked for ZOA, ZOA compensated Medoff for all expenses incurred by Medoff in the performance of his duties to ZOA.

16. Throughout the period that Medodff worked for ZOA, ZOA set Medoff's work schedule, requiring that Medoff be available from 9:00 am to 5:30 pm each day, and barring Medoff from any other employment during those hours (except for one period, between September 1994 and June 1995, during which Medoff taught a college course during some ZOA work hours, with ZOA's knowledge and agreement).

17. Upon information and belief, ZOA has a company policy pursuant to which severance payments are made to senior-level employees, at the termination of employment, who were employed by ZOA for at least three years. (hereinafter "ZOA Severance Benefit").

18. Medoff first became aware of the ZOA Severance Benefit policy set forth above on or about January, 1994, while already employed by ZOA.

19. Upon information and belief, at the time Medoff voluntarily terminated his employment relationship with ZOA, severance pay had been provided to ZOA employees similarly situated to Medoff in relation to ZOA who were entitled to a severance benefit under the policy.

20. Upon information and belief, ZOA calculated an employee's payment under the ZOA Severance Benefit as follows: that employee received one month of salary, defined as the average monthly salary of the employee over the prior three years, for every year of employment with ZOA.

21. ZOA, through several agents, officers, and/or employees, acting within the scope of their agency and/or employment, represented to Medoff on multiple occasions that he (and similarly situated employees) was entitled to, and would receive, the ZOA Severance Benefit upon the termination of his employment with ZOA. At no point prior to Medoff's termination of employment with ZOA did ZOA, through any ZOA agent, officer or employee, indicate that Medoff would not receive the ZOA Severance Benefit.

22. During his employment with ZOA, Medoff discussed his entitlement to the ZOA Severance Benefit with Klein on a number of occasions, including as recently as December 20, 2004. At no point prior to Medoff's termination of employment with ZOA did Klein give any indication to Medoff that Medoff would not receive the ZOA Severance Benefit.

23. On or about December 20, 2004, Medoff gave notice to Klein, in a telephone conversation, that, due to compelling personal circumstances, he would voluntarily terminate his employment with ZOA effective December 31, 2004. During that conversation, Medoff stated multiple times that he was entitled to the ZOA Severance Benefit, and Klein did not deny Medoff's statements.

24. Medoff worked for ZOA through the aforementioned notice period of two weeks, and his last day of employment with ZOA was December 31, 2004.

25. On or about December 31, 2004, Medoff submitted an invoice to ZOA for Medoff's final three weeks of work for ZOA, totaling Seven Thousand One Hundred Twenty Three Dollars, Forty Eight Cents ($7,123.48.00) (hereinafter the "Final Invoice," attached hereto and incorporated herein as Exhibit A). Medoff has re-submitted the Final Invoice to ZOA on multiple occasions since.

26. ZOA has failed to pay the Final Invoice to date.

27. Medoff has made several demands of ZOA, including several demands made to Klein, in his capacity as an officer of ZOA, for payment of his ZOA Severance Benefit, which have heretofore been denied. ZOA has not provided Medoff with the ZOA Severance Benefit described herein.

28. In his decision to remain under ZOA's employ in the years subsequent to his discovery of the ZOA Severance Benefit, Medoff acted in reliance upon the representations of ZOA that he would receive the ZOA Severance Benefit.

29. In his decision to voluntarily terminate his employment/business relationship with ZOA at the time he did, subsequent to providing two weeks' notice to ZOA, Medoff acted in reliance upon the representations of ZOA that he would receive the ZOA Severance Benefit.

30. Applying the formula for calculating the ZOA Severance Benefit set forth above, Medoff is entitled to a payment from ZOA of approximately One Hundred Four Thousand Dollars ($104,000.00) as ZOA Severance Benefit.

**COUNT I: VIOLATION OF THE WAGE PAYMENT AND COLLECTION ACT**

31. Medoff incorporates all previous paragraphs of this Complaint herein in their entirety.

32. Regardless of the way in which the parties may have characterized their relationship, Medoff was, for purposes of the Maryland Wage Payment and Collection Law, and for purposes of the ZOA Severance Benefit, an employee of ZOA and ZOA was his employer.

33. Maryland Code, Labor and Employment Article, Section 3-501 et seq. provides that when an employer withholds wages that are not withheld as the result of a bona fide dispute, an employee may be awarded "an amount not exceeding three times the wage, and reasonable counsel fees and other costs."

34. As defined under Maryland Code, Labor and Employment Article, Section 3-501(c)(2), a "Wage" is defined as including "a bonus, a commission, a fringe benefit, or any other remuneration promised for service."

35. Under Maryland law, "a severance benefit that is based on the length and/or nature of the employee's service, and promised upon termination, may be recoverable under the Wage Payment [and Collection] Act." *Stevenson v. Branch Banking and Trust Corp.*, 159 Md.App. 620, 861 A.2d 735, 749 (2004).

36. ZOA has failed to pay Medoff the ZOA Severance Benefit of approximately One Hundred Four Thousand Dollars ($104,000.00) that Medoff earned during his employment with ZOA.

37. ZOA has failed to pay Medoff Seven Thousand One Hundred Twenty Three Dollars, Forty Eight Cents ($7,123.48) owed Medoff for his final three weeks of employment with ZOA and as reflected in the Final Invoice (See Exhibit A).

**WHEREFORE**, Medoff demands judgment against ZOA:

A. Awarding Medoff the amount of unpaid ZOA Severance Benefit proven at trial, which should be no less than One Hundred Four Thousand Dollars ($104,000.00), and for Seven Thousand One Hundred Twenty Three Dollars, Forty Eight Cents ($7,123.48) for final wages, as compensatory damages, each sum multiplied by three, plus reasonable attorney's fees, interest, and costs of suit, as provided for in the Maryalnd Payment and Collection Law; and

B. Providing Medoff any further relief deemed appropriate by this Court.

**COUNT II: BREACH OF CONTRACT (Severance)**

38. Medoff incorporates all previous paragraphs of this Complaint herein in their entirety.

39. On or about December 14, 1993, Medoff entered into an oral contract for employment with ZOA.

40. Under Maryland law, "employer policy directives regarding aspects of the employment relation become contractual obligations when, with knowledge of their existence, employees start or continue to work for the employer." *MacGill v. Blue Cross of Maryland, Inc.*, 77 Md.App. 613, 551 A.2d 501, 502 (1989), quoting *Dahl v. Brunswick Corporation*, 277 Md. 471, 356 A.2d 221, 224 (1976).

41. Subsequent to the formation of the contractual relationship set forth above, Medoff learned of the ZOA Severance Benefit adopted by ZOA, and continued to work for ZOA, thereby entering into a unilateral contract with ZOA.

42. The failure of ZOA to pay Medoff the ZOA Severance Benefit constitutes a material breach of the unilateral contract set forth above.

43. All conditions precedent to ZOA's duty to perform under the unilateral contract set forth above were satisfied prior to ZOA's material breach set forth above.

**WHEREFORE**, Medoff demands judgment against ZOA:

A. Awarding Medoff the amount of the unpaid ZOA Severance Benefit proven at trial, which should be no less than One Hundred Four Thousand Dollars ($104,000.00) in compensatory damages, plus interest and costs of suit; and

B. Providing Medoff any further relief deemed appropriate by this Court.

**COUNT III: BREACH OF CONTRACT (Wages)**

44. Medoff incorporates all previous paragraphs of this Complaint herein in their entirety.

45. The failure of ZOA to pay Medoff his salary for the final three weeks of his employment with ZOA constitutes a material breach of the employment contract between ZOA and Medoff.

46. All conditions precedent to ZOA's duty to perform under the contract set forth above were satisfied prior to ZOA's material breach set forth above.

**WHEREFORE**, Medoff demands judgment against ZOA:

A. Awarding Medoff Seven Thousand One Hundred Twenty Three Dollars, Forty Eight Cents ($7,123.48) in compensatory damages, plus interests and cost of suit; and

B. Providing Medoff with any further relief deemed appropriate by this Court.

**COUNT IV: NEGLIGENT MISREPRESENTATION**

47. Medoff incorporates all previous paragraphs of this Complaint herein in their entirety.

48. ZOA, owed Medoff a duty of care as his employer.

49. ZOA caused Medoff to believe that he was entitled to receive the ZOA Severance Benefit at the conclusion of his employment by, among other things: (i) multiple ZOA agents / employees articulating the ZOA severance policy to Medoff and saying that Medoff (and other senior level employees) would be entitled to that severance benefit; (ii) ZOA paying departing employees in accordance with this Severance Benefit; and (iii) Klein failing to respond negatively when Medoff said that he believed that he would be entitled to the ZOA severance benefit. Through these affirmative representations and silence, ZOA negligently asserted false statements to Medoff regarding the existence of, and his entitlement to, the ZOA severance benefit.

50. ZOA intended that its false statements and failure to deny benefits, made by multiple ZOA agents, officers, and/or employees, would be acted upon by Medoff, in that Medoff would continue to work for ZOA, and decide when to terminate his

employment with ZOA, while under the belief that he would receive the ZOA Severance Benefit.

51. ZOA knew that Medoff would rely upon the false statements set forth above, and that said reliance would cause Medoff injury.

52. Medoff, justifiably took action in reliance upon the false statements of ZOA forth above, in that he continued to work for ZOA, and determined when to terminate his employment with ZOA, while under the belief that he would receive the ZOA Severance Benefit.

53. The negligent misrepresentations of ZOA set forth above actually and proximately caused Medoff damages, which were caused solely by the negligence of ZOA, without any contributory negligence or assumption of risk by Medoff.

54. The negligent misrepresentations of ZOA set forth above were made with ill will, spite, and malice.

**WHEREFORE**, Medoff demands judgment against ZOA:

A. Awarding Medoff the amount of the unpaid ZOA Severance Benefit proven at trial, which should be no less than One Hundred Four Thousand Dollars ($104,000.00) compensatory damages, plus interest and costs of suit; and

B. Awarding Medoff Five Hundred Thousand Dollars ($500,000.00) in punitive damages; and

Providing Medoff any further relief deemed appropriate by this Court.

**COUNT IV: QUANTUM MERUIT**

55. Medoff incorporates all previous paragraphs of this Complaint herein in their entirety.

56. Medoff's work for ZOA constituted valuable services rendered by Medoff to ZOA.

57. ZOA accepted, used and enjoyed the aforementioned valuable services rendered by Medoff.

58. The aforementioned valuable services were rendered under circumstances, as set forth herein, which put ZOA on reasonable notice that Medoff, in rendering said services, expected to be properly paid by ZOA.

59. Proper payment on the aforementioned valuable services includes the ZOA Severance Benefit and his final wages.

60. If it is determined in this matter that there was no unilateral contract relationship between ZOA and Medoff, as alleged in Counts II and III of this Complaint, then Medoff is entitled to the ZOA Severance Benefit and his final wages pursuant to the doctrine of *Quantum Meruit*.

**WHEREFORE**, Medoff demands judgment against ZOA:

A. Awarding Medoff the amount of unpaid ZOA Severance Benefit proven at trial, which should be no less than One Hundred Four Thousand Dollars ($104,000.00) and the amount of his final wages ($7,123.48) in compensatory damages, plus interest, costs of suit; and

B. Providing Medoff any further relief deemed appropriate by this Court.

Respectfully submitted,

COUNCIL, BARADEL,
KOSMERL, & NOLAN, P.A.

By: ______________________________

Susan Stobbart Shapiro
Michael S. Steadman, Jr.
125 West Street, 4th Floor
Post Box 2289
Annapolis, Maryland 21404
410-268-6600
*Counsel for Plaintiff*